# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                              Case: 14-CR-3547 WJ

ENRIQUE HERNANDEZ,

    Defendant.

### MEMORANDUM OPINION AND ORDER
### DENYING DEFENDANT'S MOTION FOR SENTENCE REDUCTION

THIS MATTER comes before the Court upon Defendant Enrique Hernandez' Motion for Sentence Reduction under 18 U.S.C. § 3582(c)(1)(A), filed November 6, 2020 (Doc. 39) (the "Motion"). Having reviewed the parties' briefings and the applicable law, the Court finds that Defendant's motion fails, as Defendant has not established that extraordinary and compelling reasons warrant a sentence reduction consistent with applicable policy statements issued by the Sentencing Commission. *See* § 3582(c)(1)(A)(i). Accordingly, the Motion is **DENIED**.

### BACKGROUND

In early June of 2014, agents with the Pecos Valley Drug Task Force and the Drug Enforcement Administration executed a search warrant on Defendant's place of business in Eddy County, New Mexico. Doc. 25 ¶ 8. During the search, agents discovered approximately 10 ounces of methamphetamine, as well as two rifles and a pistol which was located inside a vehicle on the property. *Id.*; Doc. 1 at 4. Defendant was charged with, and ultimately pled guilty to, possession with intent to distribute 50 grams and more of Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), aiding and abetting in violation of 18 U.S.C. § 2, and felon in possession of firearms and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Doc. 25 ¶ 3. The Court sentenced Defendant to the statutory minimum sentence of 120 months' imprisonment, which

Defendant is currently serving at the Federal Correctional Institution, Texarkana ("FCI Texarkana" or "Texarkana"), a low-security prison in Texarkana, Texas. Doc. 34; Doc. 39 at 3.

Thus far, Defendant has served approximately 6 ½ years of his 10-year sentence, but given calculated "good time" credit, his release date is tentatively set at two years from now, December 12, 2022. Doc. 41 at 6. Accordingly, Defendant now moves for compassionate release under § 3582(c)(1)(A) on the grounds that his clinical obesity and hypertension make him particularly vulnerable to more severe symptoms of the COVID-19 virus than other, healthy prisoners. Doc. 39 at 7-10; *see* Doc. 41 at 6-7. Namely, Defendant's BMI is calculated at 31, and while the CDC long held that only a BMI of 42 or higher rendered a person sufficiently "obese" with regard to COVID-19, it has recently changed its position, declaring that a BMI of 30 or higher results in a diagnosis of obesity, which is one of the conditions the CDC states increases a person's risk for developing serious illness from COVID-19. Doc. 41 at 11.

## DISCUSSION

"Generally, a federal court may not modify a term of imprisonment once imposed." *United States v. Wilson*, 493 F. App'x 919, 921 (10th Cir. 2012) (citing *Dillon v. United States*, 130 S. Ct. 2683, 2687 (2010)). However, Congress has provided a limited exception to this rule and allowed for certain "compassionate release" sentence modifications under § 3582(c)(1)(A). Before the First Step Act of 2018 was enacted, only the Bureau of Prisons ("BOP") could seek compassionate release. First Step Act of 2018, Pub. Law 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018). As amended, § 3582(c)(1)(A)(i) now permits a court to consider a compassionate release motion filed by a defendant if "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]"

Defendant submitted his request for release to Warden Salmonson of FCI Texarkana on August 12, 2020. Doc. 39 at 3. As of the filing of the subject Motion with the Court on November 6, the Warden ignored his request. *Id.* at 5. Accordingly, as the Government admits, the 30-day lapse period has passed, and Defendant is permitted to seek compassionate release from the Court consistent with § 3582(c)(1)(A)(i).

To justify the type of compassionate release that Defendant seeks, the Court must determine that "the [D]efendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*; USSG § 1B1.13. The Court must also consider the following factors set forth in 18 U.S.C. § 3553(a):

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence[s] and the sentencing range established for [the offense] . . . (5) any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

*Id.*; 18 U.S.C. § 3553(a). In truth, a balancing of these factors does not caution against release of the Defendant. While the Government argues (its only opposition to Defendant's Motion) that Defendant poses a danger to public safety due to a history of violence, the Court finds that not clear in the record. In fact, though the Government in its response presents the facts of this case as though Defendant employed a firearm during his distribution of methamphetamine, the record supports only the conclusion that Defendant's possession of the firearms in question was nonviolent. *See* Doc. 41 at 11. Defendant was observed by law enforcement selling methamphetamine on his property *outside* on two separate occasions. Doc. 1 at 2. This resulted in the issuance and execution of a search warrant. *Id.* at 3. During the search, officers located two rifles *inside* of a fifth wheel trailer on the property,

3

and a pistol in a separate vehicle. *Id*. To the extent the Government means to imply that the firearms were used in the course of the crime by mere distant presence on the property, the record supports no such conclusion. Indeed, Magistrate Judge Vidmar in his Detention Order found only that there was a risk Defendant would not appear as required, not that there was a risk Defendant would endanger the safety of other persons or the community. Doc. 10 at 2.

Furthermore, the Court finds that Defendant is not a danger to the community because, in tandem with a non-violent criminal history, Defendant seems to have taken advantage of the remedial opportunities of the prison facility during his six years there, to include participation in Employment after Prison, Ex-Offenders Talk Fatherhood, Commercial Driving, Commitment to Change, and Parenting in Education programs, as well as attending job fairs. Doc. 39, Program Review, 11. Defendant has also been furloughed on numerous occasions without incident. *Id*.

Aside from Defendant's relatively modest history of violence, the remaining factors to be considered at this stage, namely those set forth in § 3553(a), are unhelpful in evaluating a potential sentence reduction. The nature of the offense is not probative of Defendant's propensity for violence, nor does the Court believe at this juncture that home confinement would undermine the important deterrent effects to criminal conduct or undermine the law itself, as Defendant has served a substantial portion of his sentence and seems to have exhibited generally good behavior at Texarkana. Furthermore, while it cannot be said with certainty that Defendant will not once again resort to selling methamphetamine, he has demonstrated a desire to reenter the workforce through extensive vocational training, investment programs and job fairs, and has stated that he has employment lined up should his requested relief be granted.[1]

---

[1] Defendant claims to have employment secured with a fiber optic cable company in Hobbs, New Mexico, and has provided a reference contact (the owner of the company) on the Proposed Release Plan attached to the Motion. Doc 39-1 at 2.

4

Having found Defendant's Motion to be procedurally sufficient, and that he would not pose a danger to the community if released, the Court now turns to the substantive requirements of § 3582(c), which charge the Court with determining whether "extraordinary and compelling reasons . . . consistent with applicable policy statements issues by the Sentencing Commission" justify the reduction that Defendant seeks. § 3582(c)(1)(A). Defendant contends that his conditions, specifically his marginal obesity, constitute "extraordinary and compelling reasons" under the statute, and curiously, the Government claims to agree with him—curious because both Defendant's and the Government's arguments in support of the applicability of § 3582(c)(1)(A) run afoul of the plain language of the policy statement set forth by the Sentencing Commission. *See* USSG § 1B1.13, cmt. n.1.

Specifically, USSG § 1B1.13, cmt. n.1. holds that "extraordinary and compelling reasons" include certain categories of "serious physical or medical conditions" which "substantially diminish[] the ability of [a] defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13, Reduction In Term Of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement), cmt. n.1 (Nov. 2018). It is important to note that the applicable provision as written is in the present tense: "The defendant *is* suffering" from a condition "that substantially *diminishes*" his ability to provide self-care. § 1B1.13, cmt. n.1(A)(ii). Here, however, Defendant bases his request on the speculative claim that *if* he were to contract COVID-19, he may have a persistent inability to provide self-care. Therefore, because Defendant's obesity has not hindered his self-care capabilities in Texarkana for over six years, the Court would have to come to the absurd conclusion that Defendant's ability to provide self-care has been diminished as a mere result of the anxiety that COVID-19 may affect him unusually in order to grant his request pursuant to § 1B1.13, cmt. n.1(A). *See United States v. Young*, 2020 U.S. Dist. LEXIS 202543, at *12 (D. Kan. 2020) (finding that subsection (A) of § 1B1.13 did not apply because

5

the defendant with health conditions would potentially not be hindered in his ability to provide self-care "unless and until" he contracts COVID-19).

Under the catch-all provision of § 1B1.13, Defendant's argument similarly fails. § 1B1.13, cmt. n.1(D) states that release may be appropriate based on "other reasons," that is, "extraordinary and compelling reason[s]" either by themselves or in combination with a defendant's medical condition. Formerly, only the Bureau of Prisons (the "BOP") could file motions for compassionate release, and so § 1B1.13, cmt. n.1(D) states that a determination as to "other reasons" is to be made by the Director of the BOP. § 1B1.13, cmt. n.1(D); *see Young*, 2020 U.S. Dist. LEXIS 202543, at *13. However, following the First Step Act,[2] the Tenth Circuit implicitly acknowledged that courts were authorized to make a determination under § 1B1.13, cmt. n.1(D). *See United States v. Saldana*, 807 Fed. Appx. 816, 819-20 (10th Cir. 2020). And courts may, independent of the BOP, make determinations as to whether a defendant has established other extraordinary and compelling reasons to justify sentence reduction beyond those articulated in § 1B1.13 commentary (A) through (C). § 1B1.13, cmt. n.1(D); see 28 U.S.C. § 994(t) (the Sentencing Commission may define "extraordinary and compelling" reasons, including examples and the criteria to apply in doing so); cf. *Brooker*, 976 F.3d at 235-36 (because § 1B1.13 is not "applicable" to compassionate release motions brought by defendants, commentary note 1(D) does not limit district court's discretion as to whether any reasons provided are extraordinary and/or compelling).

Accordingly, the Court has discretion, where Defendant's Motion fails under § 1B1.13, cmt. n.1(A) and is inapplicable to §§ 1B1.13, cmt. n.1(B) and (C), to make its own determination as to whether § 1B1.13, cmt. n.1(D) is met. Upon review of Defendant's Motion, which maintains that

---

[2] Enacted in December of 2018, the First Step Act authorized defendants to file motions for compassionate release in addition to the BOP. The First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194; *see United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020) (acknowledging that the First Step Act shifted discretionary authority away from the BOP).

Defendant is one BMI point in excess of the CDC's minimum threshold as to obesity, as well as the speculative risk posed to Defendant by COVID-19, the Court does not find an "extraordinary and compelling" justification for release under § 3582(c)(1)(A),[3] particularly when Defendant does not allege that Texarkana is presently struggling with COVID-19 infections.

The Court does note, however, that Defendant's impressive remedial endeavors while in prison appear genuine and should be commended. Given the specific context of Defendant's good behavior, as well as the above assessment that Defendant is not a danger to the community, the Court believes that Defendant would be a good candidate for release subject to the BOP's assessment. While the Court is not directly authorized to release Defendant to home confinement, *see* 18 U.S.C. § 3621(b); *see also United States v. Cosby*, 180 F. App'x 13, 13 (10th Cir. 2006), the Court may *recommend* to the BOP that a Defendant be released to home confinement . *See United States v. Engleson*, 2020 WL 1821797, at *1 (S.D.N.Y. 2020) (while court can recommend, ultimate decision whether to release inmate to home confinement rests with BOP); *United States v. Doshi*, 2020 WL 1527186 (E.D. Mich. 2020) (recommending that the prisoner be released to home confinement under the CARES Act, noting that there is "no authority that district courts cannot amend or supplement

---

[3] For cases in which medical conditions, even medical conditions claimed by the CDC to augment the symptoms of COVID-19, have been deemed neither extraordinary nor compelling, see *United States v. Baca*, 2020 WL 5369078 (D.N.M. 2020) (finding that hepatitis C was not extraordinary or compelling, though the CDC declared that anyone with underlying condition, including liver disease, "might be at a higher risk of illness from COVID-19," and effectively that "every disease and disorder could magnify COVID-19's effects.") (J. Browning); *United States v. Gaskin*, 2020 WL 6799014 (D.N.M. 2020) (finding that a defendant with diabetes and hypertension did not have extraordinary or compelling justification for release because his fears were speculative and there was no outbreak of COVID-19 at his facility) (K. Riggs); *United States v. Olsson*, 2020 WL 6869979 (N.M.D. 2020) (finding that defendant with chronic kidney disease, heart failure, diabetes and hypertension did not demonstrate extraordinary and compelling circumstances) (K. Riggs); *United States v. Delgado-Montoya*, 2020 WL 4934308 (D.N.M. 2020) (finding that defendant's COVID-19 risk factors were insufficient to establish extraordinary or compelling justification for release because, though the risk factors were present, Defendant's illness absent an infection of COVID-19 had been managed at the prison facility) (K. Gonzales). The Court is aware that some courts throughout the United States have chosen to release inmates due, in part, to COVID-19, but here, Defendant merely theorizes that the so-called "second wave" of COVID-19 will infect the prison, not that the prison is presently subject to unusual infections rates. Additionally, Defendant still has a considerable term on his sentence. *See United States v. Rodarmel*, No. 15-10105-2-JTM, 2020 U.S. Dist. LEXIS 95186, 2020 WL 2840059, at *2 (D. Kan. 2020) (noting that many cases in which a court granted compassionate release on the partial grounds of COVID-19 involved "defendants [which] had an extremely short term (five months or less) left on their sentences[.]").

their judicial recommendation in light of the interplay of changing circumstances and factors considered at sentencing."). Therefore, because the Attorney General or BOP may consider early home confinement for certain prisoners, and because the Attorney General or BOP may seek recommendation from the courts as to home confinement requests, the Court finds that it is reasonable to recommend to the BOP, entirely subject to the BOP's assessment and decision, that Defendant be considered for release on home confinement. *See Id*. In this very limited circumstance, the Court hereby chooses to do so again recognizing that the decision whether Defendant should be released on home confinement is a decision left to the sound discretion of the BOP.

## CONCLUSION

Defendant here satisfies the requirements of 18 U.S.C. § 3142(g), as he does not appear to pose a danger to the community. Furthermore, the factors set forth in 18 U.S.C. § 3553(a) do not caution against Defendant's release. However, Defendant only articulates a speculative fear of COVID-19, and has not demonstrated that his conditions diminish his ability to provide self-care under the applicable policy statement of USSG § 1B1.13, cmt. n.1. Accordingly, Defendant's Motion for Sentence Reduction is hereby **DENIED**; however, the Court recommends to the Warden of Texarkana or the otherwise appropriate BOP official(s) that Defendant be considered for release on home confinement until his previously designated probationary period begins.

**IT IS SO ORDERED.**

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE